# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-2165

———————

United States of America,

        Appellee,

v.

Antonio Rigberto Frausto,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

———————

Submitted: March 11, 2010
Filed: August 6, 2010

———————

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

———————

SMITH, Circuit Judge.

A jury convicted Antonio Rigoberto Frausto[1] of conspiracy to distribute 500 grams or more of methamphetamine mixture, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1). Frausto argues on appeal that the government failed to adduce sufficient evidence to convict him beyond a reasonable doubt. We hold that

---

[1]The government prepared a grand jury indictment with Frausto's middle name misspelled "Rigberto." This misspelling carried throughout the record. Police booked and processed Frausto under the name Antonio Rigoberto Frausto. Frausto testified at trial that his full name is "Antonio Rigoberto Frausto Diaz," and therefore we use the spelling "Rigoberto."

there was sufficient evidence to sustain the conviction and affirm the decision of the district court.[2]

## I. *Background*

Following an arrest, an individual identified Frausto to police as a methamphetamine seller. On October 20, 2006, Omaha, Nebraska Police Officer Tony Friend arrested Christiana Dilley and Stephen Smith at the Econo Lodge motel while attempting to apprehend Calvin Davis on Davis's outstanding warrant. Officer Robert Branch also came to the arrest location and interviewed Dilley and Smith. After searching Dilley and Smith incident to arrest, the officers recovered an ounce-and-a-half of methamphetamine and a handgun.

Dilley initially told Officer Branch that Davis, her cousin, supplied her drugs to sell. Dilley said that she could call Davis, who was not present when the officers first arrived, to come to the motel so that the police could arrest him. Dilley told Officer Branch that the methamphetamine in the room belonged to Davis and that she was holding it for him. Dilley placed the call, Davis arrived, and the police arrested him. Dilley then changed her story and stated that she was actually Davis's supplier and that Davis and Smith sold methamphetamine for her. Dilley further stated that a person she knew as "Tonio Diaz" was her supplier. The person Dilley knew as "Tonio Diaz" is actually Frausto. Dilley agreed to show Officer Branch where Frausto dealt methamphetamine and stashed his money.

Dilley led police to two locations where Frausto sold methamphetamine: a trailer at 19 New Boulevard in Council Bluffs, Iowa, and a house at 3010 U Street in Omaha, Nebraska. Dilley claimed that Frausto and his associates stashed their money in the Omaha house and dealt the methamphetamine from the Council Bluffs trailer.

---

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Dilley attempted to call Frausto but was unable to set up a transaction. The police then released Dilley for the night hoping that she would try again the next day to set up a controlled buy with Frausto.

However, the next day, Dilley did not respond to several phone calls from officers. Officer Branch then contacted the Council Bluffs Police Department, explained the situation, and advised them to attempt to obtain a search warrant for 19 New Boulevard in Council Bluffs. Officer Branch obtained and executed a search warrant for 3010 U Street in Omaha. Officer Branch testified that the house at 3010 U Street "looked like the residence had been cleared out." Police did not find money or firearms. Police did find 3.4 grams of methamphetamine located in a boot in a closet in one of the rooms. The officers also located approximately 84 grams of a crystalline substance, believed to be the cutting agent methylsulfonylmethane (MSM). Also located in the kitchen of the residence was a letter addressed to "Rigoberto Frausto" from "Pedro Frausto Diaz," who was in a penitentiary in Arizona.

Detective Gerald Wake knew Dilley from his work on the Southwest Iowa Narcotics Task Force. Based upon information provided to him from Officer Branch and the Omaha Police Department, Detective Wake obtained a search warrant for the trailer at 19 New Boulevard. During the search, the officers encountered five individuals in the trailer, including Frausto.

From the trailer, police seized approximately 517 grams of methamphetamine. The officers also recovered cash, a handgun, .44 magnum rounds, a nylon-zippered case, two full 10-pound containers of MSM and one empty one, several zip-lock bags, two digital scales, aluminum foil balls consistent with methamphetamine use, and six cell phones.

Officers also found an envelope addressed to "Rigoberto Frausto" sent by "Pedro Frausto Diaz." Detective Wake testified that he found an identification card

with Frausto's picture on it. Detective Wake was not sure of the exact spelling, but the name on the identification was "Rigoberto Frausto" and the picture on the card matched Frausto, who the police discovered in the trailer.

Police arrested all five individuals in the trailer for possession of methamphetamine with intent to distribute. Detective Wake testified that money found at the trailer was consistent with prices for the purchase of specific quantities of methamphetamine, including $1200 found on Frausto. Detective Wake said that as an undercover officer he purchased one ounce of methamphetamine for $1200.

Detective Wake observed that no methamphetamine was being cooked at the time that he entered the trailer. He also noted that other than the tin foil, all the evidence consistent with a drug operation was found in one bedroom, and most of that was in the closet. Detective Wake discovered no photographs, DNA, or fingerprint testing evidence from the trailer specifically linking Frausto to the items seized.

A. *Christiana Dilley's Testimony*

Dilley pleaded guilty to a charge of possession of methamphetamine with intent to deliver as part of a cooperating plea agreement. Dilley admitted lying in the past to stay out of jail, including the night of her arrest. Dilley explained that she was originally charged in federal court with three charges: conspiracy to distribute over 500 grams of methamphetamine, possession with intent to distribute methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. Dilley testified that she was not promised a sentence reduction from the government and further testified that she was not hoping to receive a reduction; rather, she wanted to close the door on her drug activities.

Dilley stated that she met her boyfriend Sabino Diaz in 2004 through her sister. At that time, she was getting methamphetamine from Sabino's brother, Jeda. Dilley testified that she formed a drug trafficking relationship with Sabino in September

2005 after Sabino spent some time in jail. According to Dilley, she watched Sabino make methamphetamine at an apartment in Omaha. Dilley said that she also helped cut the methamphetamine with MSM. Dilley testified that Sabino was getting methamphetamine from "nephews of his" that were bringing it up from Phoenix and Mexico.

Dilley testified that their drug operation used the trailer at 19 New Boulevard as the primary base of operations. The group used the trailer as a place to make the drugs and store the drugs. She also testified that there were scales and guns in the trailer. Dilley further testified that there were drugs at the trailer every time she went to 19 New Boulevard.

Dilley stated that during the course of this drug operation she met a person identified to her as Antonio Diaz, whom she identified at trial as Antonio Frausto. Dilley stated that she saw Frausto "all the time then at the house in Omaha and at the trailer." Dilley believed that Frausto lived at the 3010 U Street house. Dilley stated that drug money was counted at 3010 U Street, although she was not sure whether any actual drug activity took place at that house.

According to Dilley, following Sabino's arrest by immigration officials in September 2006, she began receiving drugs from Frausto. She stated that on the day of Sabino's arrest Frausto and others came to her house with a large quantity of methamphetamine. Frausto told her that the drugs were hers—as Sabino had already paid for them—and left the drugs with Dilley. Dilley testified that she returned the drugs to the trailer at 19 New Boulevard. Frausto told her that she could store the methamphetamine at the trailer and come get it as needed. After exhausting this supply, Dilley continued to get more methamphetamine from Frausto. Dilley testified that she communicated with Frausto through cell phones.

## B. *Stephen Smith's Testimony*

According to Dilley, during the course of her drug operation she had two main accomplices—Smith and Davis—who each received a quarter pound or more of methamphetamine a day from her. Smith acknowledged that at the time of his testimony he was serving a federal sentence for methamphetamine charges and hoped to receive a sentence reduction in exchange for testifying. Smith further testified that he had four recent felony convictions and a conviction for making a false report. Smith agreed that for the past eight years, other than when he was in prison, he was a methamphetamine user.

Smith testified that he was introduced to a person named "Sabino" through Dilley. According to Smith, he first obtained two ounces of drugs and then later a quarter pound of methamphetamine on three separate occasions from Sabino. Smith testified that after Sabino was arrested in 2006, Smith began receiving drugs from Dilley, who received them from Sabino's nephews, including Frausto. Smith stated that he saw Dilley and her associates at the 3010 U Street house and described it as "the nephews' house." According to Smith, the drugs came from the trailer at 19 New Boulevard in Council Bluffs.

Smith stole property to trade for drugs and brought the stolen property to 3010 U Street. According to Smith, he received an ounce of methamphetamine for a Honda dirt bike, and Dilley received two ounces for a Raptor four-wheeler. During this time period Smith obtained a pound-and-a-half to two pounds of methamphetamine a week from Dilley. Smith merely accompanied Dilley to obtain her drugs at the trailer at 19 New Boulevard. Smith would remain outside the trailer while Dilley would enter for 15 to 30 minutes and exit with methamphetamine.

Smith recognized Frausto and believed that he had first seen Frausto at the 3010 U Street house. Smith never witnessed Dilley pay Frausto any money. Smith testified that Frausto was present at every drug deal. Smith did not speak Spanish and Frausto

did not speak English, so Smith never conducted any narcotics transactions with Frausto.

Based on this evidence, a jury convicted Frausto of conspiracy to distribute 500 grams or more of methamphetamine mixture. At sentencing the district court determined Frausto's total offense level to be 38 and assigned a criminal history category II, establishing a Guideline range of 262 to 327 months' imprisonment. The district court sentenced him to 240 months' imprisonment.

## II. *Discussion*

Frausto's sole argument on appeal is that the government failed to adduce sufficient evidence to convict him beyond a reasonable doubt. Frausto argues that the law enforcement officers' investigation, their raid, seized evidence, and subsequent testimony from witnesses proved only that Frausto was watching a soccer game in a trailer and associating with others who may be involved in narcotics. The government responds that the testimony from two police officers and two cooperating witnesses, together with recovered narcotics, sufficiently establish Frausto's involvement in a drug trafficking operation to sustain his conviction.

> We review de novo the sufficiency of the evidence and view that evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences. We reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt. We do not weigh the evidence or the credibility of the witnesses. Rather the jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict.

*United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007) (internal quotations, alteration, and citations omitted).

We will reverse only if we "conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997) (internal quotations and citation omitted). "The standard for reviewing a claim of insufficient evidence is strict, and a jury's guilty verdict should not be overturned lightly." *United States v. Pizano*, 421 F.3d 707, 719 (8th Cir. 2005).

Frausto argues that his conviction cannot stand, despite the testimony from the officers, Dilley, and Smith. He asserts that law enforcement officers verified nothing that Dilley or Smith said, other than that a person who Dilley claimed that she knew as "Tonio Diaz" was associated with the trailer that she claims was the main location of a drug operation. Frausto contends that, with minimal effort, law enforcement could have corroborated Dilley's version of the facts by checking cell phone records. Frausto argues that without this corroboration, the district court should not have accepted Dilley's testimony because she is not credible due to her motivation to lie on the witness stand.

We disagree and conclude that sufficient evidence supports Frausto's conviction. The prosecution does not have to adduce all potentially inculpatory evidence it may have obtained during its investigation or from a hypothetical more thorough one. The only issue is whether the evidence admitted sufficed to establish guilt beyond a reasonable doubt. *See Honarvar*, 477 F.3d at 1000. Law enforcement officers found Frausto in the trailer where Dilley advised officers that he would be found. Frausto was found in a structure with more than 500 grams of methamphetamine, a cutting agent, and a gun. These facts were entirely consistent with Dilley's story regarding Frausto's alleged drug trafficking. Frausto does not meaningfully dispute these facts other than to attack Dilley's credibility. Despite Dilley's legitimate credibility shortcomings, the jury choose to credit Dilley's version of the facts. "The finder of fact may accept the parts of a witness's testimony that it finds credible while rejecting any portion it finds implausible or unreliable." *United*

*States v. Boyce*, 564 F.3d 911, 916 (8th Cir. 2009). Such credibility findings are "virtually unreviewable on appeal." *Id*. (internal quotations and citation omitted). Frausto has not persuaded us that his challenges to Dilley's credibility render her testimony so incredible that no reasonable jury could have accepted it.

Frausto makes similar unavailing credibility arguments regarding Smith. Both Smith and Dilley testified that Frausto was involved in a methamphetamine trafficking operation, the money was located at 3010 U Street in Omaha, and the drugs were located at 19 New Boulevard in Council Bluffs. The evidence that Officer Branch and Detective Wake obtained corroborated both cooperating witnesses, and the jury believed the witnesses' testimony that Frausto sold Dilley substantial quantities of methamphetamine.

## III. *Conclusion*

The sum of this evidence, if believed, is sufficient to support the conviction. Consequently, we affirm.

_____