# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1065

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| John E. Jefferson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 14, 2011
Filed: August 30, 2011

_____

Before COLLOTON, CLEVENGER[1], BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted John E. Jefferson of wire fraud, money laundering, and failure to file tax returns. The district court[2] sentenced him to 90 months' imprisonment, and ordered $8,833,097 in restitution. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Raymond C. Clevenger, III, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

[2]The Honorable Richard H. Kyle, United States District Court for the District of Minnesota.

In 2001, Jefferson asked Edward D. Orenstein–whom he had previously done business with–to help raise capital for a venture in Liberia. Jefferson told Orenstein that the Liberian government needed help renegotiating resource contracts with corporations. Jefferson said he knew many high-ranking Liberian officials as well as influential figures, who would grant him access and influence in the renegotiation. Jefferson claimed to need investors for consulting fees to those who would position him in the renegotiation. Armed with this information, Orenstein sought investors, explaining the investment opportunity as Jefferson had explained it to him. Orenstein solicited money on his own; Jefferson did not want to meet with investors. As money was collected, Orenstein either handed it over to Jefferson in person or wired it to bank accounts. Over nearly seven years, Orenstein raised $8,833,097. He used about $400,000 to $500,000 for business expenses over the seven years; the rest he gave to Jefferson. Jefferson used the money to live on, renting multiple homes and purchasing luxury cars and items. No money was ever invested in the Liberia project.

Jefferson appeals, arguing that the evidence was insufficient for his wire-fraud and money-laundering convictions and that his sentence and the restitution were unreasonable.

This court reviews de novo the sufficiency of the evidence to support a jury verdict. *United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000). This court views the facts in the light most favorable to the verdict, accepting all reasonable inferences. *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992).

To establish wire fraud, the government must prove that the defendant "[1] voluntarily [participated in] a scheme to defraud another out of money, [2] that he did so with the intent to defraud, [3] that it was reasonably foreseeable interstate wire

communications would be used, and [4] that interstate wire communications were used." *United States v. Anderson*, 570 F.3d 1025, 1030 (8th Cir. 2009) (alternations in original).

Jefferson argues that his wire-fraud and money-laundering convictions are not supported by the evidence. He contends that Orenstein's testimony linking him to the Liberia project is uncorroborated and not credible. Witness testimony, however, does not need to be corroborated. *See United States v. Carpenter*, 422 F.3d 738, 746 (8th Cir. 2005). And a jury's credibility determinations are "virtually unreviewable on appeal." *United States v. Frausto*, 616 F.3d 767, 772 (8th Cir. 2010). At trial, Orenstein testified that the materially false statements he made to investors about the Liberia project originated with Jefferson. He testified he spoke with Jefferson daily–who would update him on the project's progress. Orenstein then gave the money he collected to Jefferson either in person or through wire transfers. The jury could credit this testimony in reaching the verdict. *See Carpenter*, 422 F.3d at 746 (8th Cir. 2005) ("Because [defendant] bases his challenge to the sufficiency of the evidence solely on witness credibility, he cannot prevail.").

Contrary to Jefferson's premise, there was additional evidence that he provided Orenstein with the false information about Liberia. In 2005, Jefferson admitted to agents of the Internal Revenue Service's Criminal Division (questioning him about taxes) that he originated the Liberia project. Consistent with Orenstein's testimony, Jefferson explained that he provided Orenstein with the information about the project, which Orenstein relayed to potential investors. Another witness also testified that when he crossed paths with Jefferson outside Orenstein's office one afternoon, Jefferson stated that the investment was almost complete, and investors would likely be paid in 30 days. In that conversation, Jefferson noted his relationship with prominent figures, including former Secretary of State Henry Kissinger.

Circumstantial evidence also indicated that Jefferson knew the investment was a fraud. *See Erdman*, 953 F.2d at 389 ("A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt."). A comparison of Orenstein's and Jefferson's spending suggests that Orenstein believed the investment to be legitimate, while Jefferson knew it was a scam. Over nearly seven years, Orenstein lived modestly, using $400,000 to $500,000 of the raised capital for operating expenses, office rent and other business incidentals, suggesting a man awaiting a big payout. Jefferson, on the other hand, used the funds Orenstein transferred (over $8 million dollars) for personal expenses such as cars and houses, suggesting a man exploiting a scheme. Based on the totality of the evidence, the jury reasonably returned a guilty verdict. *See United States v. Stenger*, 605 F.3d 492, 504 (8th Cir. 2010) ("The jurors were free to reach a logical conclusion based on the totality of the evidence presented at . . . trial.").

Jefferson next argues that the district court committed procedural error by enhancing his offense level based on an inaccurate loss calculation. This court reviews the district court's loss finding for clear error. *United States v. Erhart*, 415 F.3d 965, 970 (8th Cir. 2005). Because "the damage wrought by fraud is sometimes difficult to calculate . . . . the district court need only make a reasonable estimate of loss rather than a precise determination." *United States v. Agboola*, 417 F.3d 860, 870 (8th Cir. 2005). The district court assessed the loss by the fraud victims as between $2.5 million and $7 million. At some time before Orenstein began soliciting investors for the Liberia project, he had been raising money for a project to build high-speed ferry boats in Russia. (Although Orenstein briefly testified that this, too, was at Jefferson's direction, no charges about it were brought against Jefferson.) When Orenstein stopped raising money for the ferry-boat project, he transferred most of the money to Jefferson, and began recruiting investors only for the Liberia project. The district court's loss calculation included the funds raised for both projects. The court based its loss calculation mainly on index cards where Orenstein recorded the

investments by particular individuals. The index cards do not differentiate whether a particular investment was for the ferry-boat project or the Liberia project.

Jefferson claims that because he was not prosecuted for anything related to the ferry-boat project, any funds collected for it cannot be included in the total loss calculation. The government argued, and the district court agreed, that any money Orenstein raised for the ferry-boat project was retained for the fraudulent Liberia project. Under U.S.S.G. § 1B1.3(a)(2) "all acts or omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction" may be considered as factors that determine the Guidelines range. The district court found that the ferry-boat project was part of the fraudulent "common scheme or plan."

This circuit takes "a broad view of what conduct and related loss amounts can be included in calculating loss." *United States v. Lewis*, 557 F.3d 601, 614 (8th Cir. 2009). *See United States v. Boesen*, 541 F.3d 838, 850 (8th Cir. 2008) (affirming district court loss calculation that "reached its loss figure by combining the loss attributable to the charged crimes" with evidence of claims "that were not in the indictment"); *United States v. DeRosier*, 501 F.3d 888, 896 (8th Cir. 2007) (rejecting defendant's argument that a transaction should be excluded from the district court's loss calculation because it "was not specifically detailed in the indictment"); *see also United States v. Hinojosa*, 484 F.3d 337, 342 (5th Cir.), *cert. denied*, 552 U.S. 904 (2007) (no error where the district court included a second, uncharged Ponzi scheme in calculating the amount-of-loss for sentencing enhancement).

None of the money raised for the ferry-boat project was returned to investors. Instead, their money was retained and transferred to the Liberia project. The district court did not clearly err in considering as part of a "common scheme or plan" both the charged conduct (the Liberia project) and the uncharged conduct (the ferry-boat project). *See United States v. Straw*, 616 F.3d 737, 742 (8th Cir. 2010) (solicitation of fraud victims through uncharged conduct was part of common scheme and properly

counted toward sentencing enhancement); *United States v. Radtke*, 415 F.3d 826, 841 (8th Cir. 2005) ("Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.") (internal quotations omitted).

Jefferson further argues that the discrepancy between the district court's loss calculation ($2.5 million to $7 million) and its restitution award ($8,833,097) requires a reduction in the restitution award. The court ordered Jefferson to pay $8,833,097 in restitution pursuant to 18 U.S.C. § 3663, which this court reviews for abuse of discretion. *See United States v. Chalupnik*, 514 F.3d 748, 752 (8th Cir. 2008). "The burden is on the government to prove the amount of restitution based on a preponderance of the evidence." *DeRosier*, 501 F.3d at 896. "The district court's factual determinations underlying an order for restitution are reviewed for clear error." *United States v. Pierce*, 479 F.3d 546, 553 (8th Cir. 2007).

In determining the amount of restitution under 18 U.S.C. §3663, the court must consider "the amount of the loss sustained by each victim as a result of the *offense*." **18 U.S.C. § 3663** (emphasis added). The offense may include transactions "beyond those alleged in the counts of conviction." *United States v. Manzer*, 69 F.3d 222, 230 (8th Cir. 1995). One essential element of wire fraud is a scheme to defraud. *United States v. Edelmann*, 458 F.3d 791, 812 (8th Cir. 2006). Thus, Jefferson's fraudulent scheme (including the money initially raised for the ferry-boat project) was part of the conduct charged in the indictment. "[This court's] precedent makes clear that victim restitution may be ordered for criminal conduct that is part of a broad scheme to defraud, without regard to whether the defendant is convicted for each fraudulent act in the scheme." *United States v. Ross*, 279 F.3d 600, 609 (8th Cir. 2002). The district court was authorized to consider the charged and uncharged conduct in awarding restitution. *United States v. Farrington*, 499 F.3d 854, 860-61 (8th Cir. 2007) (affirming restitution amount that included losses from unindicted conduct); *Manzer*,

69 F.3d at 230 (affirming restitution amount that included actions beyond the specific acts alleged in the indictment); *United States v. Welsand*, 23 F.3d 205, 207 (8th Cir. 1994) (affirming restitution award of amounts received resulting from uncharged conduct). It did not abuse its discretion by ordering restitution in an amount greater than the loss calculation. *See Lewis*, 557 F.3d at 615 (8th Cir. 2009) (affirming discrepancy between the district court's $30 million loss calculation and $39 million restitution award) .

Finally, Jefferson challenges his 90-month sentence as unreasonable. This court reviews a sentence first for procedural error, and if none, for substantive reasonableness under an abuse of discretion standard. *United States v. Shy*, 538 F.3d 933, 937 (8th Cir. 2008). Jefferson contends that the district court committed procedural error by "uncritical adherence" to the guidelines. To the contrary, at sentencing the district court specifically acknowledged the relevant sentencing factors, that they were advisory, and that it was for the court to "determine what is a sentence which is sufficient but not greater than necessary to comply with those factors." *See United States v. Midkiff*, 614 F.3d 431 (8th Cir. 2010) (holding there was no procedural error where the district court varied significantly downward from the guidelines range because it "properly calculated the guidelines range and recognized that the guidelines were advisory"). Nor was the 90-month sentence–within the guidelines range of 78-97 months–substantively unreasonable. *See United States v. Linderman*, 587 F.3d 896, 901 (8th Cir. 2009) (within-guidelines sentence presumed reasonable on appeal).

The judgment is affirmed.

_____