# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1718

_____

United States of America,    *
                             *
            Appellee,        *
                             *    Appeal from the United
    v.                       *    States District Court for the
                             *    Northern District of Iowa.
Michael Mayer,               *
                             *
            Appellant.       *

_____

Submitted: October 18, 2011
Filed: March 23, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Michael Mayer appeals the district court's[1] denial of his motion for judgment of acquittal and his motion for new trial following a jury trial and guilty verdict for enticing a minor under the age of 18 to engage in sexually explicit conduct for the purposes of producing visual depictions of the same, in violation of 18 U.S.C. § 2251(a) and (e). We affirm.

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

## I.  BACKGROUND

Mayer first virtually encountered and befriended fourteen-year-old P.M., the minor involved in this case, while playing an interactive internet game in 2007 or 2008. In May 2008, the two began exchanging text messages, videos and phone calls on their cell phones. Mayer, an Iowa resident who turned thirty-eight during the course of his exchanges with P.M., knew that P.M. was fourteen years old and lived in California. Between May and August 2008, in addition to chatting with P.M. while playing the interactive game, Mayer used his cell phone to send P.M. approximately 3,800 text messages (an average of nearly thirty *each day*) and sexually explicit videos and pictures of himself. Likewise during that time, P.M. sent Mayer approximately 3,900 text messages, which also included sexually explicit pictures and videos of herself. The two visited on the phone about 130 times during this period as well; about seventy calls originated from Mayer to P.M., and about sixty calls were made by P.M. to Mayer.

The two never met personally but engaged in sexually explicit communications with each other throughout these months. P.M. testified that as their communications developed, they became more personal, more sexual, and that Mayer asked her to send sexually explicit pictures and videos of herself to him, sometimes with specific requests regarding which body part to focus on. Both Mayer and P.M. testified that they would tell each other, "I love you," regularly. Upon repeated questioning at trial, P.M. also testified that she, too, engaged in the illicit conversations and that when she sent texts, or photos or videos of herself, nude or engaging in sexual acts, she did so "of her own free will."

A grand jury returned a three-count indictment charging Mayer with (1) sexual exploitation of a child, (2) receipt of child pornography, and (3) possession of child pornography. Mayer pled guilty to the receipt and possession charges but he maintained that he never encouraged or enticed P.M. to send photos, and thus a jury

-2-

trial was held on count 1. Count 1 specifically alleged that Mayer "used, persuaded, induced, and enticed, and attempted to use, persuade, induce and entice, a minor under the age of 18 to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." See 18 U.S.C. § 2251(a). At the close of the government's case and again at the close of all the evidence, Mayer moved for judgment of acquittal and, alternatively, by way of a later motion, a new trial. Mayer claimed there was insufficient evidence that he persuaded, induced, or enticed P.M. to engage in the sexually explicit conduct for the purpose of creating a depiction of sexually explicit conduct; and there was a substantial likelihood that a miscarriage of justice occurred. The district court denied the motions and Mayer appeals.

## II.    DISCUSSION

"[T]he [district] court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012). "Reversal is warranted only if no reasonable jury could have found guilt beyond a reasonable doubt." Id. We further note that "in reviewing a defendant's challenge to the sufficiency of the evidence, '[w]itness testimony . . . does not need to be corroborated.'" United States v. Perez, 663 F.3d 387, 391 (8th Cir. 2011) (alterations in original) (quoting United States v. Jefferson, 652 F.3d 927, 930 (8th Cir. 2011), cert. denied, 132 S. Ct. 1068 (2012)). Mayer also challenges the denial of his motion for a new trial on sufficiency grounds. We review this denial for abuse of discretion. United States v. Aguilera, 625 F.3d 482, 486 (8th Cir. 2010). "The decision to grant or deny a motion for a new trial based upon the weight of the evidence is within the sound discretion of the trial court," but "[u]nless the district court ultimately determines that a miscarriage of

justice will occur, the jury's verdict must be allowed to stand." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002).

To convict Mayer under 18 U.S.C. § 2251(a) and (e), the government must have established that (1) at a time when P.M. was under eighteen years of age; (2) Mayer used, persuaded, or induced P.M. to engage in sexually explicit conduct; (3) Mayer voluntarily and intentionally did this for the purpose of producing at least one visual depiction of such conduct; and (4) at least one of the depictions was produced using a camera that had been shipped and transported in interstate or foreign commerce. United States v. Coutentos, 651 F.3d 809, 823 (8th Cir. 2011). It is the second element we address today and we conclude there is sufficient evidence to support the jury's verdict.

Mayer claims that *P.M.* initiated the sexual nature of the discussions and was the first to send a sexually explicit photo of herself; that there was no inducement on his part for her to do so. He maintains, in direct contrast to P.M.'s testimony, that each time he sent a sexually explicit photo or video of himself, he only did so at P.M.'s request; that he never randomly did so, nor did he ever ask her or induce her to reciprocate with photos or videos of herself. He further claims the government never counteracted P.M.'s testimony that she took and sent the sexually explicit photos of herself "of her own free will." Accordingly, Mayer argues that the government wholly failed to prove beyond a reasonable doubt that there was any connection between Mayer's alleged acts and the creation of the pictures; that it never established that Mayer in fact induced, enticed, or influenced P.M. to engage in the conduct in violation of the charging statute, as is required for causation under the statute. After a careful review of the evidence presented in this case, we are not persuaded by Mayer's arguments that no reasonable jury could have decided in favor of the verdict.

-4-

Contrary to Mayer's argument, P.M.'s testimony in response to repeated questions on cross-examination that she took and sent explicit photos of herself "of her own free will," does not affirmatively, nor necessarily, negate a finding that Mayer induced or enticed P.M. to do so. See United States v. Starr, 533 F.3d 985, 998 (8th Cir. 2008) (holding that there was sufficient evidence for the jury to find that the defendant enticed minors to send him photos despite the defendant's claim that the minors acted voluntarily). It is possible for P.M. to acknowledge her voluntariness and yet for the jury to have viewed the evidence and determined that Mayer was guilty of violating the statute.

Mayer ignores his role in inducing P.M. to send the photos at issue. Mayer exchanged thousands of text messages with P.M., as well as videos and phone calls, some of which contained sexually graphic and suggestive language and graphic photos of Mayer's genitalia and multiple videos of himself masturbating. Even though P.M. testified that she voluntarily participated, this does not diminish Mayer's involvement. He, too, engaged in the sexual conversations. She testified that Mayer specifically and repeatedly requested that she send photos of her breasts, and genitalia, or a video of her "fingering herself," and that she was reluctant to do so initially. P.M.'s credibility was a matter for the jury to discern and is virtually unreviewable on appeal. United States v. Rayl, 270 F.3d 709, 713 (8th Cir. 2001) (upholding conviction for enticing a minor to engage in sexually explicit conduct to produce a visual depiction, in violation of 18 U.S.C. § 2251(a), where the minor's testimony was the only evidence that the pictures at issue were taken). The jury obviously believed P.M. Given this record proof, we conclude that there was sufficient evidence for the jury to find that Mayer used, persuaded, induced, or enticed P.M. to send him sexually explicit pictures of herself.

Mayer cites United States v. Broxmeyer, 616 F.3d 120, 125 (2d Cir. 2010) for the proposition that the government was required, and failed, to prove that Mayer's alleged inducement or enticement was the "but for" cause of P.M.'s actions that form

the basis of the charge.  He argues that P.M.'s testimony that she sent the photos and videos "of her own free will," necessarily negates any "but for" causation finding. Stated otherwise, according to Mayer, P.M.'s testimony breaks any alleged chain of causation originating with Mayer.  We disagree.  Broxmeyer reversed a conviction under the same statute because the government failed to offer clear evidence that the alleged acts of the defendant at issue came *before* the minor took the relevant photos of herself, thus leaving the issue of causation unclear.  616 F.3d at 126.  Broxmeyer thus focused on the government's failure to establish that the pictures were taken after a solicitation or enticement, which is obviously necessary for a conviction.  Id. at 124-26.  Broxmeyer does not inform the instant case.  Here, as mentioned, P.M. testified that Mayer requested photos from her, even requesting that specific body parts be the focus of the photo, to which she would then oblige.  And, Mayer sent explicit photos of himself, perpetuating the exchange between the two.  All of these facts support the jury's ultimate conclusion that Mayer used, persuaded, induced, or enticed P.M. to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct.

Additionally, there is the issue of the May 2010 plea agreement admitted at trial.  In May 2010, Mayer pled guilty to count 1 of the indictment but never followed through with the agreement, thus resulting in the trial on count 1.  In that plea agreement, however, Mayer stipulated to the factual basis for count 1, which the government offered at trial.  As relevant here, the government contends Mayer previously stipulated that:

> In or between May 2008 and August 2008, in his residence in Sibley, Iowa, defendant used, persuaded, induced, and enticed, and attempted to use, persuade, induce, and entice P.M., a 14-year-old female, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct . . . .

-6-

According to the government, Mayer also initialed the following facts in the agreement, signifying their accuracy:

> On more than one occasion, using his cell phone, defendant asked P.M. to send him sexually explicit videos and images of herself. P.M. then used her LG cell phone to take videos and images of her genitals and of her touching her genitals with her fingers. She used her LG cell phone to send these videos and images to defendant. P.M. sent approximately 50-100 sexually explicit images and 2-3 sexually explicit videos of herself to defendant.

Prior to trial, Mayer resisted the admission of this failed plea agreement as evidence against him, maintaining his innocence and claiming that because the plea agreement was never confirmed through a formal plea colloquy, it should be inadmissible at trial. The district court, citing Eighth Circuit precedent in support of admission, see United States v. Quiroga, 554 F.3d 1150 (8th Cir. 2009), admitted the plea agreement at trial and Mayer does not challenge this admission today. On appeal, in support of his insufficiency argument, Mayer claims that the stipulated facts are untrue, that the factual basis in the agreement was "beyond the scope of his personal knowledge," and that to the extent there is scant evidence in this case, these stipulated facts are not the missing link. Again, Mayer maintains that P.M.'s testimony that she participated "of her own free will," breaks the chain of causation between his actions and her own. He further argues that at the time he initialed the plea agreement he did not know what P.M.'s testimony would be, although we fail to see how knowledge of P.M.'s later testimony would alter the accuracy of a factual statement stipulated to by Mayer. However, these arguments are meritless. First, we have established that P.M.'s voluntariness is a nonsequitur when it comes to establishing Mayer's guilt. And, second, to the extent Mayer challenges the evidentiary value of the failed plea agreement in light of all admitted facts, Mayer was free to make these arguments to the jury, as the plea agreement was just one piece of evidence admitted at trial and available for the jury's consideration. Regardless,

even without the admission of these stipulated facts, a reasonable jury could have found guilt beyond a reasonable doubt.

Viewing the evidence in the light most favorable to the government, we conclude that a reasonable jury could have concluded beyond a reasonable doubt that Mayer used, persuaded, induced, or enticed P.M. to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. Hence, the district court did not err in denying Mayer's motion for judgment of acquittal and likewise did not abuse its discretion in refusing to grant Mayer a new trial.

## III.    CONCLUSION

For these reasons herein, we affirm.

_____