# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-3463
_____

United States of America

*Plaintiff - Appellee*

v.

John Anthony Spencer

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 15, 2012
Filed: November 7, 2012

_____

Before MURPHY, BRIGHT, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury found John Anthony Spencer guilty of ten counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of other fraud-related crimes. The district court[1] sentenced him to 125 months' imprisonment and ordered him to pay

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

$7,874,089.21 in restitution. Spencer challenges several of the district court's evidentiary rulings and his sentence. We affirm.

I.

In spring 2005, Spencer began to work as a mortgage broker at Minnesota One, where he helped borrowers obtain mortgage financing. The evidence at trial showed that, beginning in September 2005, Spencer organized several fraudulent real estate transactions. After recruiting buyers to participate, Spencer and his staff at Minnesota One brokered mortgage loans by providing potential lenders with false information and fraudulent documents. Spencer and his staff misrepresented to the lenders that the buyers would use the properties as primary residences, and submitted false employment, income, and asset information to the lenders. They also misled lenders by failing to disclose the presence of "silent second mortgages" on the properties. Spencer would inform a lender that a buyer was going to make a sizeable down payment on the property, but the funds were actually borrowed from a second lender. To create a pool of funds from which he could pay buyers and himself, Spencer inflated sale prices by providing fraudulent appraisals to the lenders. All of the buyers eventually defaulted on the fraudulently brokered loans.

A grand jury indicted Spencer on ten counts of wire fraud, in violation of 18 U.S.C. § 1343. He was also charged with one count each of bank fraud, in violation of 18 U.S.C. § 1344, conspiracy to commit wire and bank fraud, in violation of 18 U.S.C. § 371, and money laundering in violation of 18 U.S.C. § 1957.

Before trial, the government moved *in limine* to introduce the testimony of William Hogle, Spencer's income-tax preparer for the years 2005 and 2006. The government sought to have Hogle testify that Spencer provided him with documents that mischaracterized the fraud proceeds as loans and a gift from a relative. The purpose of this evidence was to show that Spencer had attempted to conceal the

source of his income and was adept at fabricating documents. Because Hogle is both a lawyer and a certified public accountant, Spencer moved to block his testimony by asserting an attorney-client privilege. The district court denied Spencer's motion on the ground that Hogle was not acting in his capacity as an attorney when preparing Spencer's income tax returns.

Pursuant to Federal Rule of Evidence 104(b), the government also moved *in limine* for a ruling that would allow Kelly Boedecker, a Senior Credit Risk Officer with Bank of America, to testify regarding evidence that would be adduced later in the trial. The district court allowed the government to present Boedecker, but expressed an intent to give a cautionary instruction when she testified. When Boedecker appeared, however, the district court did not give the instruction.

The jury found Spencer guilty on all counts. Under the advisory guidelines, based on an offense level of 39 and criminal history category I, Spencer's recommended sentencing range was 262 to 327 months' imprisonment. The district court varied downward substantially and sentenced Spencer to 125 months' imprisonment. The court also ordered Spencer to pay restitution in the amount of $7,874,089.21. Spencer now appeals.

II.

A.

Spencer first argues that the district court erred in allowing Hogle to testify. The district court determined that the attorney-client privilege did not apply because Hogle and Spencer did not have an attorney-client relationship. We review this finding for clear error. *See United States v. Rouse*, 410 F.3d 1005, 1010 (8th Cir. 2005).

The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client. *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984). But when an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply. *Id.* In one case, this court held that when an attorney prepared a client's income tax returns, the attorney's function was that of "a scrivener," and no attorney-client relationship was established. *Canaday v. United States*, 354 F.2d 849, 857 & n.7 (8th Cir. 1966).

At an evidentiary hearing held outside the presence of the jury, Hogle testified that he provided no legal advice to Spencer, and that he had done nothing for Spencer "other than what [he] would normally deal with in preparing a tax return." Hogle explained that he does not hold himself out as an attorney, but rather "practice[s] as a CPA." Based on this testimony, the district court determined that Hogle acted in his capacity as a CPA when he assisted Spencer with his taxes, and that the two did not have an attorney-client relationship.

Spencer argues that to establish an attorney-client relationship, he need show only that he submitted confidential information to Hogle with the reasonable belief that Hogle was acting as his attorney. *See United States v. Stiger*, 413 F.3d 1185, 1196 (10th Cir. 2005); *cf. In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997). He claims that he approached Hogle seeking not only to have his income taxes prepared, but also to receive tax-planning advice, and that he was therefore seeking legal advice. *See United States v. Willis*, 565 F. Supp. 1186, 1190 (S.D. Iowa 1983).

Assuming for the sake of analysis that Spencer's legal theory is sound, the district court did not clearly err in finding that it lacked factual support. Spencer presented no evidence that he sought tax-planning advice from Hogle or that he believed that an attorney-client relationship had been formed. Spencer's argument

-4-

centered on testimony from Hogle that he refers to himself as "William G. Hogle, CPA, JD, MBT" in correspondence, and that he never documented telling Spencer that he was acting as CPA and not as an attorney. Hogle unequivocally denied providing legal advice, and the district court's finding of no attorney-client relationship was not clearly erroneous. The court properly admitted Hogle's testimony.

B.

Spencer next alleges errors in the admission of Boedecker's expert testimony. He first complains that the probative value of Boedecker's testimony was substantially outweighed by a danger of unfair prejudice, and that the court should have excluded the testimony based on Federal Rule of Evidence 403. Spencer raised no such objection in the district court, and there was no plain error in admitting the testimony.

Federal Rule of Evidence 702(a) permits expert testimony if a witness's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." *See United States v. Johnson*, 28 F.3d 1487, 1496-97 (8th Cir. 1994). Mortgage underwriting standards are beyond the experience of the typical juror. Boedecker described forms commonly used in the mortgage loan application and underwriting process, and she explained why certain information provided by the buyer—such as whether the home will be a primary residence and whether the buyer is making a down payment from his own funds—is important to the lender. Her testimony helped the jury to understand documents with which they may not have been familiar, and it gave them a basis for determining whether Spencer's alleged misrepresentations were material.

We reject Spencer's contention that Boedecker's testimony usurped the jury's role as factfinder, and thereby created unfair prejudice. Boedecker answered queries

about specific loans brokered by Spencer, and she responded to hypothetical questions about the significance to the underwriter of various misrepresentations on a loan application. But she did not express an opinion about whether Spencer had the requisite *mens rea* to commit fraud, *see* Fed. R. Evid. 704(b), or whether Spencer's actions were fraudulent. She simply provided testimony "that, when combined with other evidence, might imply or otherwise cause a jury to infer" that Spencer committed fraud. *United States v. Liner*, 435 F.3d 920, 924 (8th Cir. 2006) (internal quotation omitted). The testimony was not unfairly prejudicial, and there was no plain error in admitting Boedecker's testimony.

Spencer also complains that the district court failed to issue a cautionary instruction regarding Boedecker's testimony. The court stated at the pretrial conference that it would instruct the jury that it "should keep in mind that [Boedecker] is testifying about facts that have not yet been proved, and if they're not proved, you are to disregard her testimony entirely." As it turned out, the court did not give that instruction, but Spencer never objected, and the omission was not plain error. All of the exhibits about which Boedecker testified were admitted into evidence before she took the stand. The court's proposed limiting instruction was therefore unnecessary.

C.

With respect to the sentence imposed, Spencer makes no meaningful argument of procedural error,[2] but he does challenge the substantive reasonableness of the

---

[2]Spencer's brief states that he "maintains his objections" to enhancements that the district court applied under the advisory sentencing guidelines, but he develops no argument as to why there was procedural error on that basis, especially in light of the district court's statement that "its consideration of the Section 3553(a) factors would lead it to the same sentence even if it had sustained those defendant's objections that I overruled." S. Tr. 124-25. Spencer makes no argument that the

sentence. The district court sentenced Spencer to 125 months' imprisonment—137 months below the bottom of the advisory guideline range of 262 to 327 months' imprisonment. We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, *Gall*, 552 U.S. at 41, and "where a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Moore*, 581 F.3d 681, 684 (8th Cir. 2009) (per curiam) (internal quotation omitted). We conclude that the district court reasonably rejected Spencer's argument that his difficult upbringing and the sentences given to other white collar criminals required an even shorter sentence.

Spencer next challenges the district court's restitution order. The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663 *et seq.*, requires defendants convicted of a crime "committed by fraud or deceit" to make restitution to the victim of the offense in the full amount of each victims' loss. *Id.* §§ 3663A(c)(1)(A)(ii), 3664(f)(1)(A). The statute defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme." *Id.* § 3663A(a)(2). The district court ordered that Spencer pay restitution in the amount of $7,874,089.21, the same loss amount that it calculated for purposes of the advisory guideline range. We review the district court's finding on the amount of restitution for clear error. *United States v. Frazier*, 651 F.3d 899, 903 (8th Cir. 2011).

---

district court did not "adequately explain the chosen sentence," *Gall v. United States*, 552 U.S. 38, 50 (2007); the dissent's argument of procedural error on that ground is raised *sua sponte*. As the dissent acknowledges, moreover, *post*, at 17-18, a requirement that the district court categorically rehearse each § 3553(a) factor on the record is contrary to circuit precedent.

Spencer argues that the district court erred in ordering some or all of the restitution because financial difficulties unrelated to his fraudulent scheme caused the losses of the banks. Spencer asserts that the downturn in the real estate market and a national recession were the principal reason that buyers could not repay their loan obligations.

The MVRA requires a defendant to pay restitution to a victim who is "directly and proximately harmed as a result of" fraud. 18 U.S.C. § 3663A(a)(2). We conclude that the district court did not clearly err in finding that Spencer's acts directly and proximately caused the losses to the banks. Spencer arranged for the submission of forged documents that overstated the ability of buyers to pay on the loans, inflated home prices above market value, and failed to disclose silent second mortgages, all in an effort to induce lenders to make loans that they would not otherwise have made. The lenders suffered large losses when the buyers defaulted on their loans. The fraud was a but-for cause of the losses, for without the fraud, there would have been no mortgages in the first place, and thus no subsequent defaults. It also was reasonably foreseeable to Spencer that a scheme premised on false loan applications and inflated real estate prices would unravel, and that market conditions could exacerbate the losses. *See United States v. McKanry*, 628 F.3d 1010, 1019-20 (8th Cir. 2011). The causal connection between Spencer's acts and the losses was not unreasonably extended, *see United States v. Vaknin*, 112 F.3d 579, 589-90 (1st Cir. 1997), and we therefore conclude that the district court did not clearly err in refusing to reduce the restitution amount based on external market factors.

Spencer also contends that the district court erred in granting restitution to U.S. Federal Credit Union, because it was not a "victim" for purposes of the MVRA. We consider a ruling on victim status *de novo*. *United States v. Chalupnik*, 514 F.3d 748, 752 (8th Cir. 2008). Spencer obtained $2.9 million from U.S. Federal as part of a scheme to help a real estate developer and a credit union employee remove under-performing, "toxic" loans from U.S. Federal's balance sheet. He contends that

the credit union was not a victim of wire fraud, however, because a U.S. Federal employee was involved in the fraud. This argument mistakenly conflates the employee with the financial institution. When a fraud is visited upon a financial institution, it is the "institution itself—not its officers or agents—that is the victim of the fraud." *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992). That a customer colludes with a financial institution's employee does not preclude a finding that the institution was directly and proximately harmed as a result of the fraud. *United States v. Sheahan*, 31 F.3d 595, 600 (8th Cir. 1994).

Spencer next argues that the district court clearly erred by failing to subtract from the restitution amount payments that were made on the mortgages. Because the district court determined that the loss amount was the same for purposes of the guidelines and restitution, the court adopted the formula suggested by the guidelines for determining actual loss amount. It calculated the loss for each property as "the amount of the fraudulently obtained mortgage loans minus any payments made on the loan principal and the value of the collateral at the time of the sentencing." An IRS special agent testified at sentencing that while some of the home buyers involved in the scheme made payments on their loans, any reduction in principal balance was "very small." Spencer produced no evidence to compel a finding that repayments were more than negligible. The district court thus did not clearly err in declining to reduce the amount.

Finally, Spencer contends that the district court erred in ordering restitution for losses related to mortgages on four properties that were not listed in the indictment. There was no evidence about these properties at trial, but the government included them in its submission at sentencing. Because Spencer raises this argument for the first time on appeal, we review only for plain error.

Where an offense has as an element a scheme, conspiracy, or pattern of criminal activity, restitution may include losses that are directly caused by the

defendant's conduct as part of the scheme, conspiracy, or pattern. 18 U.S.C. § 3663A(a)(2); *United States v. Jefferson*, 652 F.3d 927, 932 (8th Cir. 2011). The government presented evidence that the loans on these four properties were secured as part of the scheme that was charged in the indictment. Spencer brokered each of these loans, and the loan applications included material misrepresentations, such as misleading information about the source of the down payment for the properties. This evidence supported a finding that the loans for the additional properties were procured as part of the charged scheme, and the district court did not commit plain error by including these losses in the restitution amount.

*       *       *

The judgment of the district court is affirmed.

BRIGHT, Circuit Judge, dissenting.

I concur with respect to the majority's decisions concerning the district court's evidentiary rulings on attorney-client privilege and expert testimony. But I dissent as to Spencer's sentence in order to express my view that the district court's mere mention of the § 3553(a) factors, without more, gives insufficient support for the sentence. I also express my dissatisfaction with the current state of the guidelines system and urge the district judge in this case and district judges in this Circuit to assist the appeals court by providing an analysis of the § 3553(a) factors in support of every sentence.

## I.      Absence of Explanation under § 3553(a)

The guidelines gave Spencer a base-offense level of 7, and then proceeded to add 20 levels for causing $7,874,089.21 in losses  and 12 levels for a variety of other

-10-

enhancements to reach a total offense level of 39.[3]  With that offense level and no criminal history points, the guidelines called for a sentence between 262 and 327 months in prison (21 years, 10 months to 27 years, 4 months).  However, the sentencing judge departed downward significantly and sentenced Spencer to 125 months in prison (10 years, 5 months).  The judge offered a brief explanation for the departure:

> Now, the reasons for this sentence are, the Court finds that the sentence imposed is appropriate and reasonable in light of the considerations set forth in 18 United States Code, Section 3553(a).  The Court has taken into account the nature and circumstances of the instant offense, as well as the history and characteristics of the defendant and the need to avoid unwarranted sentence disparities, and finds that the sentence is sufficient, but not greater than necessary, to afford adequate deterrence to future criminal conduct.

Sentencing T. 124.

The fraud guidelines have been heavily criticized because they no longer provide a reasonable starting point for sentencing.  *See* Brief for Wash. Legal Found. and Criminal Law Scholars as Amici Curiae Supporting Petitioner at 20-21, *Rubashkin v. United States*, ___ U.S. ___, 2012 WL 1119792 (2012) (No. 11-1203).  Adjustments based on the amount of loss lead to astronomical sentences that have little connection to criminality.  Frank O. Bowman, III, *Nothing is Not Enough: Fix the Absurd Post*-Booker *Federal Sentencing System*, 24 Fed. Sent'g Rep. 356, 360

---

[3]In addition to the 20 level enhancement for the amount of loss between $7 million and $20 million, Spencer received two levels for involving more than 10 victims, two levels for sophisticated means, two levels for deriving more than $1 million in gross receipts as a result of the offense, four levels for being an organizer and leader, and two levels for abusing a position of trust, for a total offense level of 39.

(2012) (stating that the guidelines for white-collar crimes are universally recognized as "so high as to be practically worthless"). The much-below guidelines sentence imposed on Spencer suggests that the guidelines simply did not apply here. No reasonable judge would have imposed a sentence of over 20 years. Spencer had zero criminal history points. But even if the guidelines should not apply to a particular offender and his crime, a sentencing judge should not have unlimited discretion to impose a sentence without some proper basis. A sentencing judge should be guided by § 3553(a). In order to adequately review a sentence, we need the sentencing judge to perform an analysis under § 3553(a) and to explain this analysis on the record. Here, we do not know which § 3553(a) factors the sentencing judge relied on. Saying simply, "This sentence is appropriate under § 3553," is no different than an opinion stating "I hold for Party A because my findings are in his favor."

A sentencing judge is required to consider all of the § 3553(a) factors and "make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). "*Booker* and § 3553(a) thus demand that federal sentencing judges exercise reasoned judgment by filtering the Guidelines' advice through the provisions of § 3553(a)." Douglas A. Berman, *Reasoning Through Reasonableness*, 115 Yale L.J. Pocket Part 142, 142 (2006). After making a sentencing decision, the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The analysis should not be a boilerplate recitation of the statute but should explain the sentence in terms of the defendant who is before the judge.

In *Rita*, the Supreme Court emphasized the importance of a district court's explanation of a sentence under § 3553(a). *Rita v. United States*, 551 U.S. 338, 358-59 (2007). The Supreme Court noted that "a statement of reasons is important" because "[b]y articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process

-12-

but also helps that process evolve." *Id.* at 357. The Supreme Court found that the sentencing judge had sufficiently explained the sentence imposed although the sentencing judge stated only that the sentence was appropriate. *Id.* at 359. But that brief statement would not be sufficient in this case in which the amount of loss steered the sentence to an unusually harsh guidelines range for an offender with no criminal history. A brief statement may have been appropriate in *Rita* because the sentence imposed was within the guidelines range. *Id.* at 358. However, a significant departure, such as the one in this case, merits further explanation.

A district court is not required to provide "a mechanical recitation of the § 3553(a) factors when determining a sentence." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quotation omitted). However, I believe the converse is also true—a mechanical recitation that the sentence complies with the requirements of § 3553(a) is insufficient. It is impossible for an appellate court to meaningfully review a sentence without the underlying rationale. This is especially true in areas like fraud, where the guidelines have been consistently and repeatedly disregarded by sentencing judges.

The majority concludes that the sentencing judge said enough. I disagree. *See United States v. Zobel*, No. 11-3341 (6th Cir. Oct. 11, 2012) (Moore, J., dissenting) (explaining that § 3553 requires district courts to state their reasons for imposing an outside-guidelines sentence and that failing to do so precludes meaningful appellate review). In my view, it was insufficient for the sentencing judge to state only that he made the requisite considerations and took into account the statutorily mandated factors. There is no way to tell how the judge weighed the factors and ultimately why he chose Spencer's sentence.

Here, the district court properly disregarded the guidelines as a proper measure of the sentence. The defendant in this case, who was guilty of fraudulent conduct in many real estate transactions, made mistakes. But with zero criminal history points,

by any realistic assessment, his mistakes in no way merited a sentence of over 20 years as ordained by the guidelines. The sentencing judge, a most able and experienced federal trial judge, recognized the unfairness of the fraud guidelines as applicable here. Nevertheless, I believe that we need to have an explanation under § 3553(a) in this and all similar cases where the guidelines would advise an unfair heavy sentence and therefore should not control the sentence. The sentencing judge committed procedural error by "failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *See Gall*, 552 U.S. at 51. For this reason, I would reverse Spencer's sentence and remand the case for further explication of the reasons for the sentence under

§ 3553(a).

## II.    The Guidelines as a Questionable Starting Point

Since their adoption in 1987, many of the federal sentencing guidelines have proven unworkable, unfair, and have filled our federal prisons with defendants serving undeserved lengthy sentences, all at a higher cost to the government.[4]

---

[4]*See e.g.*, Andrew Romano, *Jim Webb's Last Crusade*, Newsweek, Sept. 19, 2011, at 50-53. In 1984, about 48% of federal defendants received a purely probationary sentence—that's nearly half. U.S. Sent'g Comm'n, 2 *The Federal Sentencing Guidelines: A Report on the Operation of the Guidelines System and Short-Term Impacts on Disparity in Sentencing, Use of Incarceration, and Prosecutorial Discretion and Plea Bargaining* 376 fig.14 (1991). By 2002, only 9.1% of federal defendants received probationary sentences. In the six years from 1984 to 1990, the average sentence imposed for all federal crimes increased from 24 months to 46 months. By 1992, the average sentence rose to nearly 67 months. U.S. Sent'g Comm'n, *1995 Annual Report* 61 fig.F (1996), *available at* http://www.ussc.gov/annrpt/1995/annual95.htm. These longer sentences make corrections a costly industry. Recent figures put corrections spending at $75 billion per year. John Schmitt, Kris Warner & Sarika Gupta, Ctr. for Econ. & Policy

In many cases, the guidelines do not present a reasonable starting point for sentencing decisions. Sentencing judges are now free to ignore the guidelines and sentence on the § 3553(a) factors alone based on categorical disagreements with the guidelines. *Spears v. United States*, 555 U.S. 261, 264 (2009) (per curiam). And district courts have exercised that authority in regard to several areas of the guidelines, including crack cocaine, receipt and possession of child pornography, and high-loss fraud sentences. *See, e.g.*, *United States v. Prosperi*, 686 F.3d 32, 34 (1st Cir. 2012) (affirming a sentence of 6 months home monitoring for fraud convictions where the guidelines range was 87-108 months); *United States v. Dorvee,* 616 F.3d 174, 182-88 (2d Cir. 2010) (vacating a within-guideline sentence for distribution of child pornography and detailing numerous issues with the relevant guidelines); *Spears*, 555 U.S. at 265-66 ("[D]istrict courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.").

In high-loss fraud cases, sentences are significantly driven by the amount of loss: "along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. background (2011). Linking sentence length to the amount of loss in fraud cases often leads to unfairly long sentences, just as the link between drug quantity or weight and sentence length does. *See United States v. Santonelli*, 128 F.3d 1233, 1238 n.5 (8th Cir. 1997) ("The amount of drugs attributed to an offender may have little relationship to an offender's degree of criminality. For example, a drug courier may be held responsible for a heavy weight

---

Research, *The High Budgetary Cost of Incarceration* 2 (2010), http://www.cepr.net/documents/publications/incarceration-2010-06.pdf. Nonviolent offenders currently account for over 60% of the prison and jail population in this country. *Id.* at 1.

of drugs carried and receive a very long sentence for a relatively minor role in the drug crime."). There is broad consensus among scholars that basing the fraud guidelines on the amount of loss "often results in widely unwarranted sentencing disparity and a lack of certainty in sentencing, and produces sentences grossly disproportional to the actual seriousness of the offense." *See* Alan Ellis, John R. Steer & Mark H. Allenbaugh, *At a "Loss" for Justice*, 25 Crim. Just. 34, 35 (2011). Many sentencing judges have also come to the same conclusion: "[S]ince *Booker*, virtually every judge faced with a top-level corporate defendant in a very large fraud has concluded that sentences called for by the Guidelines were too high." Frank O. Bowman, III, S*entencing High-Loss Corporate Insider Frauds After Booker*, 20 Fed. Sent'g Rep. 167, 169 (2008).

Sentencing for some of these crimes has been complicated by Congress's policy efforts. In these areas, Congress has stepped away from its reliance on the Sentencing Commission and "used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy . . . ." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing* 72-73 (2004). As I have noted before, "[w]hile Congress's direct involvement in the guidelines is not inherently problematic, it is suspect when it lacks significant policy discussion and analysis." *United States v. Zauner*, 688 F.3d 426, 431 (8th Cir. 2012) (Bright, J., concurring). The creation of an independent, bipartisan commission was designed "to insulate sentencing policy, to some extent, from the political passions of the day"—"research and reason," not politics, were to govern the guidelines. Richard P. Conaboy, *The United States Sentencing Commission: A New Component in the Federal Criminal Justice System*, 61 Fed. Probation 58, 62 (1997).

## III.    District Courts Should Justify Each Sentence Under § 3553(a)

It would seem from the nature of the criticism as well as reviewing the overall result of guidelines sentences, that the present guidelines system needs Congressional

review and drastic change. If we are to keep a system of sentencing guidelines, they must be modified to ensure basic fairness such as that envisioned in § 3553, which requires district courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). In the meantime, district courts have an obligation to impose fair sentences in criminal cases and appellate courts need to properly review a sentence when appealed.[5]

To ensure that criminal defendants receive fair sentences, this dissent urges that sentencing judges always engage in a meaningful analysis of the § 3553(a) factors—the process should not devolve to be rote, mechanical, and artificial. Whether imposing a sentence within, above, or below the guidelines, the touchstone should always be the standard in § 3553 of a sentence sufficient but not greater than necessary and judges should verify the sentence pursuant to § 3553(a), explaining for the record "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed…(6) the need to avoid unwarranted disparities." *Id.*

I acknowledge that conducting a § 3553(a) analysis in every case may be more work for a sentencing judge. But this worthwhile endeavor could lead to great improvement in our current system. Now sentencing courts have virtually unlimited discretion because appeals courts such as the Eighth Circuit will uphold a sentence as long as the sentencing judge says nothing more than, "I have…considered the other factors described in§ 3553(a)…. I find that the sentence imposed on [the defendant] is reasonable in light of the factors." *United States v. Hernandez*, 518 F.3d 613, 616-17 (8th Cir. 2008) (upholding a sentence because the district court "expressly stated" it considered the § 3553(a) factors without further analysis); *see also United States*

---

[5]I also note that our system of sentencing may be improved through the use of sentencing councils, which I have discussed elsewhere. *United States v. Ayala*, 610 F.3d 1035, 1037-38 (8th Cir. 2010) (Bright, J., concurring).

*v. McGlothen*, 556 F.3d 698, 702 (8th Cir. 2009) ("[T]here is no need to recite each § 3553 factor."); *United States v. Dieken*, 432 F.3d 906 (8th Cir. 2006) ("[W]e do not require a district court to categorically rehearse each of the section 3553(a) factors on the record." ).  I strongly disagree with the comments stated above in these appellate cases.

## IV.    Conclusion

The sentencing judge was required to hand down a just, well-reasoned sentence, and to do so in a fashion that demonstrated that the defendant received the individual consideration due to him under § 3553(a).  I would reverse and remand to the district court for imposition of a sentence no higher than that already imposed, justified by reference to the § 3553(a) factors.

The sentence previously imposed may very well be a proper one.  But the brief explanation in this case gives the appeals court little basis for a reasoned review.

_____